**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Marcia S. Krieger**

Civil Action No. 17-cv-01645-MSK-SKC

ENOW ENOW,

    **Plaintiff,**

v.

**NATIONAL ASSOCIATION OF BOARDS OF PHARMACY, and**
**PEARSON PROFESSIONAL CENTERS,**

    **Defendants.**

---

**OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to various pending motions (delineated herein), most prominently Defendant National Board of Pharmacy's Motion for Summary Judgment **(# 140)**; and Defendant Pearson Professional Centers' Motion for Summary Judgment **(# 141)**.

## FACTS

The Court summarizes the pertinent facts herein, elaborating as necessary in its analysis.

Mr. Enow wishes to become licensed as a pharmacist. To do so, a person must take and pass a licensing exam, known as NAPLEX, that is created by the National Association of Boards of Pharmacy ("NABP") and administered on computers by Pearson Professional Centers ("Pearson"). Candidates are afforded a limited number of opportunities to take the NAPLEX, after which their path to licensure is foreclosed or, at the very least, rendered more difficult.

1

Mr. Enow first sat for the NAPLEX exam on August 19, 2016 ("the 2016 NAPLEX"). As discussed in more detail below, Mr. Enow contends that he experienced technical difficulties in completing the test and that Pearson staff members failed to follow Pearson's established guidelines for resolving the situation. In response to Mr. Enow's complaints, the Defendants undertook an investigation, which included reviewing "test maps" for the exam that reveal all of Mr. Enow's input activities (such as mouse clicks and data entries) during the exam. The Defendants concluded that Mr. Enow's difficulties were the result of "candidate error" and deemed his test valid. Because Mr. Enow did not answer a sufficient number of questions to qualify for a score, NABP recorded his as having failed the 2016 NAPLEX.

Mr. Enow sat for the NAPLEX again on January 5, 2017 ("the 2017 NAPLEX"). Again, he experienced technical issues in taking the test and contends that Pearson failed to resolve those issues in accordance with its guidelines. Once again, the Defendants conducted an investigation into Mr. Enow's complaints, but concluded that Mr. Enow's test attempt should be treated as valid. Mr. Enow did not achieve a passing score on this attempt and was again recorded as having failed the exam. (Mr. Enow has since unsuccessfully taken the NAPLEX and related exams additional times, but those attempts are not germane to the issues before the Court.)

Mr. Enow then commenced the instant action *pro se*.[1] As narrowed by a prior ruling **(#67)**, Mr. Enow asserts two claims against NABP and Pearson: (i) a claim for breach of contract, in that NABP and Pearson did not act in accordance with the promises made in a

_____

[1] Because of Mr. Enow's *pro se* status, the Court liberally construes his pleadings and filings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

2

written "Candidate Bulletin" that they issued to test takers; and (ii) that NABP and Pearson acted

negligently by administering the NAPLEX in an incompetent manner.

Both NABP **(# 140)** and Pearson **(# 141)** now move for summary judgment in their favor

on Mr. Enow's claims. Both the Defendants and Mr. Enow have also filed various motions and

other matters, each which the Court addresses in detail below.

## ANALYSIS

### A. Mr. Enow's motions/submission

Because resolution of Mr. Enow's various motions and filings will help streamline

consideration of the Defendants' motions, the Court addresses Mr. Enow's filings first.

#### 1. Motion for Sanctions

On July 27, 2019,[2] Mr. Enow filed a "Motion for Sanctions for Conspiracy to Commit

Fraudulent Alteration of Material Evidence" **(# 161)**. In this motion, Mr. Enow alleges that

Pearson has "tampered with" the test maps that it has produced. Mr. Enow proposes that, as a

result, the Court should: (i) "compel joinder of claims, minor children, equitable relief, and

punitive damages," which this Court understands to be a request by Mr. Enow to amend his

Complaint in response to the alleged tampering; and (ii) "consider this motion [for sanctions] as

a Motion for Summary Judgment under Rule 56."

Mr. Enow's motion does not particularly elaborate on the reasons why he believes that

the test maps have been altered. Mr. Enow identifies the "original" and "altered" test maps as

---

[2]     Mr. Enow began filing the evidence supporting this motion a few minutes before
midnight on July 26, 2019, and filed the motion itself just before 1:00 a.m. on July 27. Whether
the Court affords Mr. Enow a July 26 or July 27 filing date on his motion does not materially
alter the analysis.

Docket # 138-3 (original) and Docket # 138-4 (altered) for the 2016 NAPLEX exam, and Docket # 138-9 (original) and Docket # 138-10 (altered) for the 2017 NAPLEX exam.  The Court's review of those exhibits reveals that they present the same data, differing only in their formatting.

The test maps take the form of a columnar chart that lists, for each test item, as many as 13 fields of data (test item numbers, the time Mr. Enow spent on the particular item, the data he entered in the test on that item, and so on).  In the "original" version of the test maps, that data is presented in portrait-style orientation.  Because of that orientation, all 13 columns relating to a single row of data cannot be displayed simultaneously on the same sheet of paper.  As a result, some columns of data are displayed on pages only after other columns have been displayed in their entirety, making it extremely difficult to correlate all of the items of data that correspond to a given row.   By contrast, the "altered" test maps are in the form of a spreadsheet shown in landscape-style orientation, allowing all 13 columns to be displayed simultaneously for a given row.  Thus, as best the Court can determine, the "altered" versions of the test maps contain exactly the same data as the "original" versions, differing only in format and readability.  Certainly, Mr. Enow has not pointed to any instances in which the "altered" test maps contain different information than the "original" maps.

The record appears to indicate that Pearson provided Mr. Enow with the "altered" test maps in late February 2019, in response to Mr. Enow's complaints about the "original" maps being unreadable.  It is clear from Mr. Enow's Motion for Sanctions that he had possession of both versions by May 17, 2019, because on that date, he wrote to Pearson's counsel and

informed them of "his intent to seek criminal referral for tampering [ ], perjury, and amend the second amended complaint to include additional claims for injuries suffered."

Taking the specific items of relief that Mr. Enow requests in his motion for sanctions, the Court begins with Mr. Enow's request that he be granted leave to amend his complaint to join new parties (namely, his minor children) and assert new claims based on Pearson's alleged altering of the test maps. The Court denies that motion for numerous reasons. First, Mr. Enow has not tendered any proposed amended pleading as is required for any motion seeking leave to amend pursuant to D.C. Colo. L. Civ. R. 15.1(b). This alone is a sufficient basis to deny Mr. Enow's request to amend.

Second, the deadline for amendment of pleadings set by the Scheduling Order **(# 37)** expired in December 2017, long before Mr. Enow's instant motion. When a deadline for amendment in a scheduling order has passed, requests for leave to amend must not only satisfy Fed. R. Civ. P. 15's "freely given" standard, but must also satisfy the "good cause" standard for modification of a scheduling order under Fed. R. Civ. P. 16(b)(4). *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018). This Court finds that Mr. Enow has not shown good cause to amend his complaint in response to Pearson's production of the "altered" test maps. Rule 16's "good cause" standard requires the movant to show, among other things, that he acted diligently in seeking to amend quickly upon discovering the facts ostensibly warranting that amendment. *Id.* at 1020-21 (plaintiff who waited more than six months to seek amendment after discovering facts justifying it failed to demonstrate good cause). Here, Mr. Enow has been aware of the "altered" test maps since approximately February 2019 (or, at the very latest, May 2019), yet waited until late July 2019 in order to request leave to amend his

complaint based on those altered maps. This Court finds that Mr. Enow has not articulated a valid reason for not moving more quickly, and thus finds that he has failed to satisfy the Rule 16 standard.

Finally, putting aside all other reasons, the Court finds that Mr. Enow has not demonstrated good cause to amend his pleadings under Rules 15 or 16 because the factual predicate of his motion – that Pearson produced fraudulent test maps to him during discovery – is demonstrably false. As explained above, the "original" and "altered" test maps in the record contain exactly the same data; they differ only in their formatting, with the "altered" maps easier to read and understand. Mr. Enow has not come forward with any evidence that Pearson has modified the underlying data in the "altered" versions, that Pearson has attempted to prevent Mr. Enow from relying on the "original" version if he desired to do so, or otherwise taken any actions relating to the "altered" maps that would prejudice Mr. Enow's claims in any way. Thus, Mr. Enow's complaints about alterations of the test maps are frivolous and cannot support a request to amend the complaint at this time.

For similar reasons, the Court rejects Mr. Enow's second request in the motion for sanctions: that the motion itself be deemed Mr. Enow's own summary judgment motion. The deadline for dispositive motions set by the Scheduling Order was May 21, 2019 **(# 120)**. Mr. Enow's own motion, filed in July 2019, would thus be untimely. Mr. Enow has not shown that any impediments prevented him from filing his motion for sanctions as a motion for summary judgment within the Scheduling Order deadline. Although Mr. Enow proceeds *pro se*, that status does not relieve him of the obligation to abide by the same deadlines and rules that apply to litigants with lawyers. *U.S. v. Griffith*, 928 F.3d 855, 864 n. 1 (10th Cir. 2019). Because the

Court would not accept an untimely motion for summary judgment from a counseled litigant, it does not accept Mr. Enow's untimely motion either. Moreover, as noted above, Mr. Enow's motion simply lacks any merit in its facial contentions of evidence tampering, and the Court would deny it on its merits in any event.

Likewise, to the extent Mr. Enow's motion for sanctions can be construed to request any other form of relief, the Court finds that it lacks any actual merit. Accordingly, the motion is denied in its entirety.

### 2. **Objections to discovery ruling**

In March 2019, Mr. Enow filed a Motion to Compel **(# 101)**, requesting that the Defendants produce a variety of information regarding the 2016 and 2017 NAPLEX exams, including the test questions themselves and correct answers, along with Pearson's exam software. (Mr. Enow conceded that, by then, Pearson had produced the test maps, but he complained that he "did not understand the allege[d] documents and he does not believe that the Court will be able to understand" them, and that Pearson's explanations of the maps "are very ambiguous.") The Court referred Mr. Enow's motion to the Magistrate Judge, and on April 4, 2019, the Magistrate Judge denied **(# 129)** Mr. Enow's motion. Among other things, the Magistrate Judge found: (i) that Mr. Enow had not shown that the test questions themselves were relevant to Mr. Enow's breach of contract or negligence claims, which focused on the Defendants' failure to comply with their established protocols for dealing with technical difficulties occurring during the testing, and that in any event, NABP has a legitimate business interest in shielding past test questions from disclosure because NABP may choose to re-use some of those questions on future exams; (ii) as to the request for the exam software, Mr.

Enow's request was overly broad and irrelevant, given that Pearson had produced the test maps that showed "every mouse click and key stroke [Mr.] Enow made during the first two examinations," and that production of the software itself would simply yield the same test map data Mr. Enow already had.

On April 20, 2019, Mr. Enow filed Objections **(# 131)** to the Magistrate Judge's rulings pursuant to Fed. R. Civ. P. 72(a). Mr. Enow argues that, at trial, he intends to prove that, notwithstanding any technical difficulties he suffered during the exams, "he passed these exams and he will [prove] his actual scores in this court," and contends that access to the actual test questions is necessary to such proof. Although he acknowledges that the test maps are "the most relevant and important documents" in this case, he complains that "the test maps are supposed to look like school transcripts" but that, in reality, they "require a person to apply complicated statistical applications called 'item review theory'," and that production of the test questions and answers themselves will help him demonstrate his actual score. He also argues that "some of the test maps have been tampered with" and that "you can see that numbers, letters, patterns, and all sort of things have bene flipped around" in the test maps that have been provided by Pearson, although he does not elaborate. Mr. Enow acknowledges that his Objections were "filed one day late," which he attributes to having mistakenly counted fourteen days from April 5, 2019, the date on which the Magistrate Judge advised **(# 130)** him of his right to file objections, rather than from the date of the April 4, 2019 Order.

The Court reviews objections to non-dispositive rulings by the Magistrate Judge pursuant to Fed. R. Civ. P. 72(a), reversing the Magistrate Judge's rulings only where they are "clearly erroneous or contrary to law." A ruling is "clearly erroneous" where, after reviewing the entirety

of the evidence, this Court is "left with the definite and firm conviction that a mistake has been committed." *Allen v. Sybase, Inc.*, 468 F.3d 642, 659 (10th Cir. 2006). Motions to compel invoke the discretion of the Magistrate Judge within the confines of Fed. R. Civ. P. 26(b)(1), which generally allows for broad discovery or relevant evidence, subject to concerns of proportionality to the needs of the case as reflected by various factors recited in the Rule.

The Magistrate Judge's Order correctly noted the relevant provisions of Rule 26(b)(1) and Mr. Enow's Objections do not contend that the Magistrate Judge applied an incorrect legal standard. Thus, the Court cannot conclude that the Magistrate Judge's Order was contrary to law.

As to whether the Magistrate Judge's ruling was clearly erroneous, this Court finds that it was not. As this Court's July 31, 2018 Order **(# 67)** explained, a fair reading of Mr. Enow's Second Amended Complaint revealed four possible claims against the Defendants. The first two, sounding in breach of contract and negligence, addressed the Defendants' failure to appropriately respond to technical difficulties that occurred during Mr. Enow's 2016 and January 2017 NAPLEX attempts; the third claim involved allegations of fraud directed at the Defendants' representations regarding their investigation into these technical difficulties; and the fourth claim alleged that the Defendants retaliated against Mr. Enow for complaining about the first two NAPLEX attempts by giving him failing scores on his next two attempts at the NAPLEX, in March and June 2017, even though he completed those tests without technical difficulties and, according to Mr. Enow, answered sufficient questions to warrant a passing grade. In its July 2018 Order, this Court dismissed Mr. Enow's third and fourth claims, leaving

only his contract and negligence claims directed at the Defendants' responses to his technical problems on the first two NAPLEX attempts.

When Mr. Enow's claims are properly cabined – as the Magistrate Judge did – his discovery requests in the Motion to Compel are correctly rejected as irrelevant. Mr. Enow's claims relating to the first two NAPLEX attempts do not allege that he <u>actually obtained</u> a passing score despite his technical difficulties; rather, they allege that the Defendants failed to adequately respond to the technical issues he experienced, thereby <u>preventing</u> him from obtaining a passing score. Indeed, Mr. Enow's Second Amended Complaint admits that (due to the technical difficulties) he "ran out of time at about the question number 152" on his 2016 NAPLEX attempt, and that he was required to answer at least 162 questions to be eligible for a passing score. *Docket #* 46 at 13, ¶ 19, 22. Likewise, his allegations about his second NAPLEX attempt concede that, due to technical difficulties, he "couldn't finish given the emotional stress and time wasted." *Id.* at 16, ¶ 30 *and* 17, ¶ 34(B). Thus, because Mr. Enow's remaining claims do not turn on a contention that he actually <u>passed</u> in either of his first two attempts at the NAPLEX, Mr. Enow's request for discovery that would allow him to prove that he passed those exams is irrelevant to the claims he has asserted.[3]

---

[3] It may very well be that Mr. Enow's conception of his own claims has evolved, and that, contrary to his contentions in his Second Amended Complaint, he now believes that he can prove that he actually passed his second NAPLEX attempt <u>despite</u> the technical problems. *See e.g.* Docket # 194 ("Plaintiff passed . . . the NAPLEX exam on 01-05-17 that he had computer problems"). But a contention that the Defendants mis-scored his second NAPLEX attempt falls outside the scope of the claims he pled in the Second Amended Complaint and thus, is not properly before the Court at this time.

Moreover, the Magistrate Judge also properly considered the proportionality of Mr. Enow's requested discovery with the needs of this case, according to the factors set forth in Rule 26(b)(1). Most notably, with regard to Mr. Enow's request for the actual test questions and answers used, the Magistrate Judge found that the burden on NABP that would result from complying with that request – effectively preventing NABP from recycling those questions on future NAPLEX exams – outweighed the likely benefit that would result from disclosing them to Mr. Enow. It is undisputed that NABP does periodically re-use test questions in subsequent exams, and thus, the Court cannot say that the Magistrate Judge erred in finding that this factor further tipped against granting Mr. Enow's motion to compel. Similarly, the Magistrate Judge found that, because Mr. Enow had already received the test maps themselves, production of the exam software would be unduly burdensome and disproportionately harm the Defendants. This Court sees no error in those conclusions either. Mr. Enow has, at most, offered only conclusory assertions that the test maps do not accurately reflect what happened during his exam attempts, but he has not articulated any basis for believing that the ability to review the exam software itself will allow him to identify the nature and source of any disparities between the test maps and the actual events that occurred. Moreover, disclosure of the exam software itself would pose an unreasonable risk to Pearson that the software could be hacked, reverse engineered, or otherwise manipulated in such a way as to compromise Pearson's ability to use it to securely administer exams in the future.

Thus, the Court overrules Mr. Enow's Objections and affirms the Magistrate Judge's denial of Mr. Enow's motion to compel.[4]

### B. The Defendants' Motion to Strike

1. Docket # 164-189

Roughly a week after Mr. Enow filed his Motion for Sanctions, he proceeded to file a string of docket entries **(# 164-189)**. Docket # 164 is captioned as a declaration by Mr. Enow "in support of [his] motion for sanctions," but it consists simply of a recitation by Mr. Enow identifying various exhibits, without meaningful discussion or analysis of the significance of those exhibits. The remaining docket entries consist of the exhibits themselves.[5] Although the exhibits are ostensibly tendered in support of Mr. Enow's Motion for Sanctions, many of these exhibits are not referenced in that motion at all, nor are they cited in any other briefing by Mr. Enow that is presently before the Court. The Defendants move **(# 196, 199)** to strike those filings as irrelevant and untimely. Mr. Enow has not filed any meaningful response to the Defendants' motions.[6]

---

[4] Because the Court disposes of Mr. Enow's Objections on the merits, it need not consider the question of whether they were timely. In any event, as the 10th Circuit noted in *Sybase*, this Court has the discretion to nevertheless consider objections that were untimely.

[5] There is considerable duplication in these filings. For example, it appears that Docket #178 is a duplicate filing of the declaration found at Docket # 164. Docket # 179 consists of three exhibits (EE-227, EE-225, and EE-230) that Mr. Enow also attached to Docket # 164. Exhibit EE-165 at both Docket # 168 and Docket # 186 (as well as in other places in the record, such as at Docket # 193).

[6] In a series of letters filed with the Court beginning in or about August 2019 **(# 198, 200, 202)**, Mr. Enow stated that he had been in ill health and was intending to file amended pleadings and substantive responses to various filings by the Defendants within a few days. Each of the self-imposed deadlines Mr. Enow set for himself in these letters passed without any response. On September 13, 2019, Mr. Enow moved for an extension of time **(# 203)** to "amend [his]

12

It is difficult to know what to make of Mr. Enow's filings at Docket #164-189.  Although they are captioned as being submitted in support of Mr. Enow's Motion for Sanctions, few of the exhibits are cited in that motion.  In many respects, the filings appear to be a dump of much or all of the discovery that Mr. Enow has obtained to date in this case. But because the filings are not tethered to any brief discussing or explaining the significance of the exhibits to Mr. Enow's arguments, it appears that Mr. Enow has left it to the Court to sift through the exhibits on his behalf.  Given the volume of filings and the lack of focus by Mr. Enow, the Court declines any invitation to do so.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (courts should be "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it").  Similarly, although some or all of the exhibits could have been cited by Mr. Enow in support of arguments opposing the Defendants' summary judgment motions, Mr. Enow has not filed any brief containing such arguments, leaving the exhibits to speak for themselves.  Once again, the Court cannot serve as Mr. Enow's advocate and assemble arguments for him from the exhibits he has filed.  In the absence of a substantive summary judgment response – and Mr. Enow has not filed any despite having had nearly four months to do so – the exhibits themselves are of no significance.

That being said, the Court denies the Defendants' specific request that Docket # 164-189 be "stricken."  In the era of paper files, a stricken filing could be removed from the official

---

motion for fraudulent alteration, [to] reply to Defendants motions for summary judgment, and [to] stay litigation," citing to his ill health and desire to seek out an attorney to represent him.  On October 18, 2019, Mr. Enow filed a similar motion requesting an extension of time **(# 206)** to respond to the Defendants' motions, explaining that he had been unsuccessful in his search for a lawyer and that he intended to continue to pursue his claims *pro se*.  The Court denied **(# 207)** both motions for extension of time, finding that Mr. Enow had not shown good cause for any such extensions.

record and discarded, eliminating its existence; in the age of electronic filing, the act of "striking" a filing has no meaningful consequences, as "stricken" filings remain accessible on the electronic docket. The act of "striking" a pleading serves little more purpose than the Court simply announcing that it will not consider that filing. Thus, this Court denies the Defendants' motions to "strike" Docket # 164-189. However, the Court agrees with the Defendants that those filings are not appropriate for consideration by the Court with regard to any remaining matters, and thus, the Court does not consider them.

2. Docket # 192-195

The Defendants' motions to strike also seek to strike Docket # 192-195. Docket # 192 is captioned as Mr. Enow's declaration of "True Examination Scores In Support of Pending First Amended Motion For Examination Fraud." In that declaration, Mr. Enow explains that he "finally figured [ ] out" how to use Pearson's ExamDeveloper software and the test maps produced by Pearson from his 2016 and 2017 NAPLEX attempts to calculate his own exam scores. Mr. Enow states that, based on his scoring methodology, he "passed . . . the [January 2017] NAPLEX exam" (as well as several other test attempts that are not the subject of the remaining claims). Mr. Enow's declaration does not explain the methodology he used to re-score his exams. The remaining docket entries consist of the test maps produced by Pearson, hand-annotated and highlighted by Mr. Enow in various locations, along with certain mathematical calculations hand-written by Mr. Enow. The Defendants' Motion to Strike seeks to strike these filings as well, describing them as "untrue."

Once again, the filings at Docket # 192-195 are difficult to characterize. Mr. Enow describes them as supporting an "Amended Motion for Examination Fraud" he anticipated filing,

14

but more than two months later, Mr. Enow has not filed such a motion. They cannot be construed as a motion in and of themselves, as Mr. Enow has not identified any particular relief that he seeks in conjunction with them. In any event, such a motion would have to be construed as a dispositive motion that would be untimely under the Scheduling Order, and Mr. Enow has not shown any good cause that would justify extending the Scheduling Order's deadlines under Rule 16(b) to allow such a motion at this time.

Arguably, the filings could be construed as some sort of response by Mr. Enow to the Defendants' summary judgment motions, but such filings would be untimely under D.C. Colo. L. Civ. R 7.1(d), which requires summary judgment responses to be filed within 21 days of the Defendants' motions. The last extension granted by the Court to Mr. Enow to file summary judgment responses expired on July 26, 2017 **(# 157)**, and Mr. Enow did not file Docket # 192-195 until August 8, 2019. Even if the Court were to treat these filings as a summary judgment response from Mr. Enow, for the same reasons stated above, the arguments contained therein – that Mr. Enow achieved a passing score on the 2017 NAPLEX exam – are not germane to Mr. Enow's claims in this case, which focus on allegations that the Defendants failed to properly respond to technical difficulties he experienced during the exam.[7]

---

[7] The Court would also find that Mr. Enow's self-calculated scores are not properly before the Court on summary judgment because Mr. Enow has not shown that his calculations could be rendered in a form that would ultimately be admissible at trial. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Without a comprehensive explanation of the scoring methodology he used, Mr. Enow has not demonstrated a foundation for the admission of his self-calculated scores. Moreover, the Court notes that the Candidate Bulletins on which Mr. Enow relies here make clear that "NAPLEX uses a mathematically based weighted scoring model to calculate an ability measure for each examinee," such that "scaled scores do not represent the raw number of correct answers and should not be interpreted as such." To demonstrate that his self-calculated scores are relevant evidence that he achieved a passing scaled score, Mr. Enow would have to show that he correctly applied the weighted scoring model that the Defendants use to calculate

Thus, once again, although the Court denies the Defendants' motion to "strike" Docket #192-195, the Court finds that those filings are not properly before the Court with regard to any pending matters in this case, and thus, the Court disregards them.

**C. Defendants' summary judgment motions**

The foregoing discussions clarify the scope of the record before the Court on the Defendants' Motions for Summary Judgment **(# 140, 141)**. Mr. Enow has not filed any direct responses to those motions and, as discussed above, the Court does not construe any other filings by Mr. Enow to serve as substantive summary judgment responses. Although Mr. Enow did not file any response to the Defendants' summary judgment motions, the Court does not simply grant those motions as defaulted. Rather, the Court must still examine whether the Defendants' briefing demonstrates that there are no triable issues of fact. Mr. Enow's failure to respond simply operates as a waiver of his right to controvert the facts presented (and supported) in the Defendants' motion. *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

1. <u>Standard of review</u>

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party

---

test scores. Nothing in the record indicates that Mr. Enow attempted to do so, much less that he actually did.

with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. Breach of contract claim

Mr. Enow's first claim alleges that the Defendants' handling of the technical problems he experienced during his test operated to breach contractual promises made by the Defendants in the Candidate Bulletins that accompanied the test. In deference to Mr. Enow's *pro se* status, the Court considers this claim in three related contexts: breach of express contract, breach of the duty of good faith and fair dealing, and promissory estoppel.

(a) underlying facts, 2016 NAPLEX

As noted above, Mr. Enow's failure to file a summary judgment response operates to waive his ability to contest the facts alleged (and supported) by the Defendants.[8] Thus, the following factual recitation is derived from the evidence adduced by the Defendants.

_____

[8] The Court must acknowledge that the allegations in Mr. Enow's Second Amended Complaint disputes many key facts in the recitation. But a party faced with a motion for summary judgment may not simply rest on its pleadings, and must come forward with specific factual evidence. *Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009). Mr. Enow's failure to file any response to the Defendants' summary judgment motion thus prevents the Court from deeming Mr. Enow's Second Amended Complaint to stand as a factual rebuttal.

In some circumstances, this Court has treated *pro se* filings as the equivalent of affidavits, deeming the filings themselves to constitute evidentiary material capable of rebutting a summary judgment motion. The Court declines to do so here, however. Mr. Enow's own characterization in his complaint about the events during the two exams could very well have changed as a result of discovery in this case, particularly where the Defendants maintain test maps that show, with a high degree of precision, the particular events that occurred and the times involved. The Defendants have also produced affidavits from various officials that explain the test maps (or other records of Mr. Enow's exams) in even more detail. In the face of such evidence, the Court will not assume that Mr. Enow would continue to assert the same factual version of events reflected in his complaint. Perhaps he would, or perhaps, his recollection of events being somewhat refreshed, he might offer a different factual recitation. Accordingly, the Court declines to treat Mr. Enow's Second Amended Complaint as serving as a factual rebuttal to the Defendants' summary judgment motion.

Mr. Enow made his first NAPLEX attempt on August 16, 2016. Mr. Enow answered Questions 1 through 13 without incident. When he attempted to complete Question 14 on the exam and move on to Question 15, the exam software prevented Mr. Enow from doing so because candidates are required to have scrolled through all material in an exam question before moving on to the next one. (The requirement is imposed to ensure that candidates have read all of the case information supplied for the question and have not accidentally overlooked anything.) When the software displayed an instruction directing him to scroll through all of the information in order to proceed, Mr. Enow did so and the software then allowed him to move on to the next question. The same scenario repeated itself at least 36 more times during the exam: Mr. Enow attempted to finish a question without having scrolled through all the pertinent information, the software prevented him from doing so and issued a warning notice, and Mr. Enow was allowed to proceed to the next question upon scrolling through all of the relevant information.

When Mr. Enow completed Question 149, he again sought to move on to the next question, but the software prevented him from doing so because he had not completed the scrolling. Mr. Enow attempted to scroll through the test information for the next 3 minutes and 43 seconds, but apparently failed to observe that one of the exhibits required horizontal scrolling, rather than vertical, to completely view. At that time, Mr. Enow apparently summoned a staffer at the test center. It appears that the staffer was unable to immediately resolve the issue for Mr. Enow, and thus, the staffer called Pearson's remotely-located technical support team. It appears that an additional 1 minute and 53 seconds of time elapsed with no test activity by Mr. Enow as he waited for the staffer and, ultimately, the technical support technician. At 12:42:13, Pearson's technical staff stopped Mr. Enow's exam. Because Mr. Enow had only about a minute

19

and a half remaining on his exam clock at that time, Pearson's technical staff added 15 minutes to the exam clock to ensure that it would not expire while the technical problem was being resolved. The technical staff then decided to reboot the computer Mr. Enow was using. The reboot process took slightly more than 10 minutes, but that time was not counted against Mr. Enow's exam clock, which remained stopped during the reboot. When the reboot was complete, Mr. Enow resumed testing.

A few minutes later, Mr. Enow complained to Pearson staff that the questions on the screen did not match the lab values that were provided on screen and demanded a re-test. According to an incident report completed after the event, Pearson staff "advised that he could complete the exam to the best of his ability or the exam could be stopped again and [the technical support team] would again be called to attempt to resolve the issue." Mr. Enow chose to continue testing. A few minutes later, Mr. Enow's exam clock expired and the test was concluded. Mr. Enow had not answered a sufficient number of questions to allow a score to be calculated under the NAPLEX test rules, and thus, he was reported as having failed the exam.

(b) Underlying facts, 2017 NAPLEX

Mr. Enow made his second attempt at the NAPLEX on January 5, 2017. With about 30 minutes remaining on his exam clock, Mr. Enow was using an on-screen calculator included in the exam software. Mr. Enow reported that the calculator got "stuck" on the screen, blocking the question and answers, and that he was unable to move or close the calculator. Mr. Enow summoned Pearson's test center staff, and the staff member also was unable to move the on-screen calculator. The staff member provided Mr. Enow with a physical calculator, and Mr. Enow resumed testing. About 10 minutes later, Mr. Enow summoned test center staff again and

20

complained that the physical calculator he was given was not working.  Test center staff brought

Mr. Enow a second calculator, and he resumed testing again.  Each of these instances appear to

have lasted no more than approximately one minute.

At some point in time, the test center staff member contacted Pearson's technical support

team and was instructed to stop Mr. Enow's exam clock and restart the computer. [9]  According to

---

[9]      Pearson produced an incident report after the event that, among other things, includes a
description of what can be seen on a video recording from the testing center.  The description of
the video can be summarized as follows:

> 3:55:23 pm – 3:56:27 pm: Mr. Enow summons a test center staffer
> and they converse.  The description does not state as much, but one
> can assume that the staffer then left and Mr. Enow resumed testing
> for roughly 7 more minutes.
>
> 4:03:46 pm – 4:05:10 pm: Mr. Enow again summons a staffer, and
> they converse.  Once again, although the description does not state
> as much, one assumes the staffer left at the end of this time period,
> but, as set forth below, returned just seconds thereafter.
>
> 4:05:28 pm – 4:06:39 pm: Mr. Enow again summons a staffer.
> After a short discussion, the staffer leaves and returns with a
> calculator.
>
> 4:07:02 pm – 4:07:55 pm: The staffer "returns to the workstation [
> ] and works on the computer."  It is not clear from the record
> whether this is Mr. Enow's workstation and computer, or whether
> this is the staffer's workstation.
>
> 4:17:44 pm  – 4:18:42 pm:  Mr. Enow summons the staffer again.
> After a short discussion, the staffer leaves and returns with a
> second calculator.
>
> 4:35:50 p.m.:  Mr. Enow summons the staffer and, after a
> discussion, Mr. Enow leaves the testing room, concluding the test.

Admittedly, there are some discrepancies between the report's explanation of the events shown
on the video and the version of events described in the various affidavits submitted by the
Defendants.  For example, there is some ambiguity as to the sequence in which Mr. Enow was

the affidavit of John Hammers, Pearson's Technical Support Manager, Pearson's records show that Mr. Enow produced no test activity for a period of approximately 4 minutes (from 4:03:15 pm to 4:07:19 pm), which Mr. Hammers believes reflects the time that Mr. Enow spent summoning the test center staffer and the time for the test center staffer to contact technical support. Mr. Enow's exam clock was stopped while his computer was restarted, and Mr. Hammers reports that the reboot of the computer took about 4 minutes and 20 seconds.

The record is somewhat unclear as to what occurred after that reboot, but it appears that Mr. Enow resumed testing and completed the test. Mr. Enow's scaled score for this attempt was 55, falling short of the passing grade of 75.

### (c) breach of express contract claim

To establish a claim for breach of express contract under Colorado law, Mr. Enow has the burden of showing: (i) that a binding contract existed between the parties; (ii) that he performed his obligations under the contract or that he was excused from doing so; (iii) that each Defendant failed to perform its obligations under the contract; and (iv) that Mr. Enow suffered losses as a result of the Defendant's non-performance. *Western Distributing Co. v. Diodosio*, 841P.2d 1053, 1058 (Colo. 1992). The Defendants contend that Mr. Enow cannot show the existence of any contract, that either Defendant failed to perform as promised, or that Mr. Enow suffered any losses as a result of any non-performance.

The Court need not address whether the contents of the Candidate Bulletin constitute a binding contract because, even if the Court found that they did, Mr. Enow has not come forward

---

given physical calculators and his computer was rebooted. However, regardless of the particular sequence of events, it appears that the cumulative amount of time consumed by all of Mr. Enow's difficulties during this exam amounted to only slightly more than 6 full minutes.

with evidence that creates a triable issue of fact as to whether the Defendants breached that contract.[10]  Mr. Enow's contract claims arise from the language found in the 2016 and 2017 Candidate Bulletins,[11] informational pamphlets that explain various test rules and procedures to NAPLEX takers.  On the cover page, the Bulletins contain the following disclaimer: "The policies and procedures specified in the [Candidate Bulletin] are subject to change without notice."

Liberally construed, Mr. Enow's breach of contract claims allege that the Defendants failed to properly attend to situations in which Mr. Enow experienced technical difficulties while taking the NAPLEX exam.  The Candidate Bulletins set forth the following under the heading "Atypical Testing Circumstances."

> In the rare event that a problem arises in the administration of an examination, it may affect an individual or a group of test takers. Problems may include, without limitation, power failures, defective equipment, or other disruptions of exam administrations such as natural disasters or other emergencies.  When these atypical circumstances occur, Pearson VUE will conduct an investigation to provide information to NABP.  Based on this information, NABP, at its sole discretion, may not score the test, may withhold reporting of a score while NABP reviews the matter, or may cancel or invalidate the test score.  If NABP deems it appropriate to do so, NABP will work with Pearson VUE to give affected candidates the opportunity to retake the test as soon as possible at no additional cost.  Affected test takers will be notified

---

[10]     Were the Court forced to reach the issue, the Court would conclude that, under the circumstances presented here, the Candidate Bulletins do not constitute a contract.  The disclaimer language found on the cover page, allowing NABP the authority to change the terms of the Candidate Bulletin at any time and without notice, is fundamentally inconsistent with treating the Bulletin as creating binding contractual obligations that test candidates could enforce.

[11]     Although the contents of the 2016 and 2017 Bulletins differ slightly, the language pertinent to the analysis herein did not materially change from year to year.

of the reasons for the cancellation and their options for retaking the test.

[. . .]

NABP reserves the right to determine, in its sole discretion and at any time, whether to withhold the reporting of an examination score or to cancel or invalidate one or more examination scores of an individual or a group of individuals. . .

NABP may cancel or invalidate an examination score or withhold the reporting of an examination score for any reason, including, without limitation, the following:

> • Atypical testing circumstances
> [ . . .]
> • Testing irregularities
> [ . . .]

NABP's right to determine whether to withhold, cancel, or invalidate an examination score is not in any way waived or modified because NABP processed an examination registration form, authorized a candidate to sit for an examination, scored an examination, or reported an examination score.

[. . .]

Technical Difficulties:

On rare occasions, technical difficulties occur at testing centers. If you experience a computer-related technical problem, notify the test center administrator immediately. Every reasonable effort will be made to correct any difficulties as soon as possible.

[. . .]

If technical issues cause you to wait more than 30 minutes after your scheduled appointment time, or a restart delay lasts longer than 30 minutes, you will be given the choice of waiting to continue the exam or rescheduling your appointment with no additional fee.

If you choose not to reschedule, but rather to continue testing after a delay, you will have no other options and your testing results will

be considered valid.  If you choose to reschedule your appointment or the technical issue cannot be resolved, you will be allowed to test at a later date at no additional charge and without a required waiting period.

(Emphasis added.)

Assuming, without necessarily finding, that the Candidate Bulletins constitute enforceable contractual promises to Mr. Enow, those promises consist solely of the following: (i) that when atypical testing situations occur, Pearson will conduct an investigation and report to NABP; (ii) that Pearson staff will make "every reasonable effort" to correct any technical difficulty during testing; and (iii) that candidates who have to wait more than 30 minutes due to a "restart delay" will be given an option to abandon the test or continue taking it. These are the only clear and definite promises that represent that the Defendants will react to a certain situation with a certain specific response, and they are the only promises that the Court is capable of interpreting and enforcing.  All of the remaining provisions in the quoted language address situations in which NABP or Pearson are granted sole discretion to decide how to proceed.  (The question of whether the Defendants may have abused that discretion is addressed below.)

Based on the undisputed facts set forth above, the Court finds no genuine issue of fact as to whether the Defendants breached any of the contractual promises contained in the Candidate Bulletin.  As to the 2016 NAPLEX incident, it is clear that Pearson investigated the incident and reported it to NABP.  That incident report is found at Docket # 138-2.  The record reflects that Pearson staff made every reasonable effort to resolve the technical issue during testing.  Although it appears that the scrolling issue may have initially confounded the Pearson test center staffer that responded to Mr. Enow's request, the incident report reflects that staffer followed Pearson's procedures by contacting off-site technical support, and that rebooting Mr. Enow's

computer solved the problem and allowed Mr. Enow to resume testing.  Certainly, there is

nothing in the record that would suggest that the procedures Pearson followed were

unreasonable.  Finally, the record does not reflect that the delay in addressing Mr. Enow's

technical issue(s) exceeded 30 minutes, such that the Defendants were obligated to give him the

option to abandon the test.  The record reflects that the reboot delay was only slightly longer than

10 minutes, and the delays in summoning testing center staff may have added only a few minutes

more.  Thus, Mr. Enow has not shown any triable issue as to whether the Defendants breached

any express promises in the Candidate Bulletins relating to his technical difficulties during the

2016 NAPLEX.

The same analysis applies to the 2017 NAPLEX attempt.  The record reflects that

Pearson conducted a post-incident investigation, and its report is found at Docket # 148-1.  The

record indicates that Pearson made reasonable efforts to resolve Mr. Enow's calculator problem,

both by providing him with physical calculators and by rebooting his computer in order to fix the

problem.  Mr. Enow has not argued that Pearson's remedial efforts were unreasonable.  Although

it is fair to say that some portion of Mr. Enow's allotted test time was consumed during these

incidents, the record reflects that Pearson and NABP policies confer discretion on them to decide

whether to add time to a candidate's exam.  Put differently, the record does not contain any

express promise by Pearson or NABP to add time to a candidate's exam clock because of

technical difficulties, and thus, their failure to do so on the 2017 NAPLEX exam cannot support

a breach of express contract claim.  Finally, the record does not reflect that any delay, or even

combination of delays, exceeded 30 minutes, such that the Defendants were required to offer Mr.

Enow an opportunity to abandon the test and reschedule.  Based on Mr. Hammers' estimate, the

restart delay was only about 4 minutes long. Even if the Court were to aggregate all of the instances (as timed by the video) in which Mr. Enow was talking to test center staff instead of testing, that total delay amounts to less than 7 minutes.

Accordingly, because the undisputed evidence shows that the Defendants did not breach any of the promises in the Candidate Bulletin that could be given contractual effect, the Defendants are entitled to summary judgment on Mr. Enow's breach of express contract claims.

### (d)  breach of the covenant of good faith and fair dealing

Every contract in Colorado includes an implied covenant of good faith and fair dealing. *Spring Creek Explor. & Prod. Co. v. Hess Bakken Investment II, LLC*, 887 F.3d 1003, 1019 (10th Cir. 2018). That principle is invoked when the contract gives one party the discretion to determine certain terms of the contract (often items such as quantity, price, or time). *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). The covenant exists to ensure that the parties' intentions and reasonable expectations regarding the contract are honored. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). The covenant prevents the party with discretion from "act[ing] dishonestly or . . . outside of accepted commercial practices" in order to deprive the other party of the benefits of the contract. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104 (10th Cir. 2009). The burden of proving a violation of the duty of good faith is on Mr. Enow, to be demonstrated according to "the standards of conduct existing in the industry." *Monroe Property, LLC v. Bachelor Gulch Resort, LLC*, 374 F.Supp.2d 914, 922 (D.Colo. 2005).

As recited above, the Candidate Bulletins confer considerable discretion upon NABP in the administration of the NAPLEX. Most significantly, after receiving a report of a technical incident during testing, NABP has the discretion to either cancel the candidate's attempt or to

27

treat the test as valid and count the candidate's score. Although it is not specifically recited in the Candidate Bulletin, the record also reflects that both Defendants have some discretion in deciding whether to add extra time to a candidate's exam clock to offset time consumed by technical difficulties. If Mr. Enow can show that the Defendants exercised this discretion in bad faith, with the purpose of frustrating his legitimate expectations under any contract created by the Candidate Bulletin, he may have a valid claim for breach of the covenant of good faith and fair dealing.

Because Mr. Enow has not come forward with any evidence of any standards that exist in the standardized testing industry that apply to circumstances like his, he has failed to demonstrate a triable issue of fact as to whether the Defendants' actions breached such industry standards. In addition, this Court cannot conclude that Mr. Enow can show that the Defendants' exercise of their discretion was unreasonable, much less done in order to frustrate Mr. Enow's legitimate expectations arising from the promises in the Candidate Bulletin. Mr. Enow's legitimate expectations when entering into any contract with the Defendants would be to have an opportunity to take the NAPLEX exam like any other candidate. As the Candidate Bulletin explains, technical difficulties during testing are "atypical" events, but events that can occur, and the Bulletin expressly provides for certain procedures that will be observed should such technical difficulties occur. It may be unfortunate for Mr. Enow that such technical problems happened during his tests, but his expectations when entering into any contract necessarily had to include expecting that the Defendants would proceed according to their stated policies if technical problems occurred during his exam. And for the reasons set forth above, the Court finds that the Defendants complied with all procedures set forth in the Bulletin.

Moreover, nothing in the record before the Court indicates that the Defendants' investigation and resolution of Mr. Enow's technical difficulties were undertaken in anything other than good faith. With the 2016 exam, the record indicates that Pearson's technical support team added time to Mr. Enow's exam clock that more than made up for the delay that resulted between the time Mr. Enow reported the problem and he was able to resume testing after his computer rebooted. The Defendants' after-the-fact investigation included Mr. Enow's version of events and his concerns ("candidate was very irate and asked if he could retest..."). The Defendants considered that information, along with the test maps and other evidence, only to determine that Mr. Enow's difficulties were likely the result of "candidate error" rather than any error in the test software or other conditions within the Defendants' control. Mr. Enow may certainly disagree with that conclusion, but he has not come forward with any evidence that suggests that the Defendants ignored or manipulated relevant evidence or otherwise conducted a bad faith investigation.

As to the 2017 exam, again, the investigation included a recitation of Mr. Enow's concerns ("throughout the whole process the candidate complained that he was losing time") and statements from test center staffers, and the Defendants reviewed all other available information, including video recordings of the test location. The record does not reflect whether NABP reached any particular conclusions about what had caused the technical difficulties in this circumstance, but it is clear that NABP concluded that, whatever the cause, the issue did not warrant nullifying Mr. Enow's exam results. This Court cannot say that this was necessarily an abuse of NABP's discretion. The record reflects that the delays experienced by Mr. Enow were short, amounting to no more than a few minutes in an exam that had lasted more than 4 hours.

Certainly, these are less than ideal testing circumstances, but given the undisputed fact that Mr. Enow was aware of the possibility of technical difficulties occurring during testing, the Court cannot find that Mr. Enow has made a colorable showing that the Defendants' responses to his circumstances during the 2017 exam breached the covenant of good faith and fair dealing. Thus, the Defendants would be entitled to summary judgment on any claim by Mr. Enow of that type.

(e) <u>promissory estoppel</u>

Finally, the Court considers whether the undisputed facts demonstrate whether Mr. Enow can assert a cognizable claim for promissory estoppel. Under Colorado law, promissory estoppel functions in the absence of a contract, but exists to enforce the "basic contract principle that one who makes promises must be required to keep them." *George v. Urban Settlement Services*, 833 F.3d 1242, 1257 (10th Cir. 2016). To establish a claim for promissory estoppel, Mr. Enow must demonstrate: (i) a promise by a Defendant; (ii) that the Defendant should have expected would induce Mr. Enow's reliance; (iii) that Mr. Enow did, in fact, rely on that promise to his detriment; and (iv) that the promise must be enforced in order to prevent injustice. *Id.*

Mr. Enow has not identified – and the Court does not see – any promises made by the Defendants to him that have not already been addressed above. The Defendants promised to administer the NAPLEX test, promised that they would attempt to resolve any technical difficulties during that exam to the best of their ability, promised to investigate such difficulties after the fact, and promised to cancel Mr. Enow's test attempt if they concluded that circumstances warranted. As explained above, the Court finds that, on the undisputed facts in this case, the Defendants complied with all of these promises.

Moreover, the Court has profound doubt that Mr. Enow could show that he relied upon any promise by the Defendants, much less that he did so to his detriment. As noted above, the Candidate Bulletin conspicuously advises prospective test takers that NABP can elect to change the terms of the Bulletin at any point in time without notice. This raises a serious question as to whether reliance on any statement in the Bulletin would be reasonable. But more importantly, Mr. Enow cannot demonstrate that he relied upon any representations to his detriment: it is undisputed that, if Mr. Enow wants to be licensed as a pharmacist in Colorado, he <u>must</u> take and pass the NAPLEX exam. There is no indication that Mr. Enow could have chosen to take a different licensing exam, and that he decided to take the NAPLEX instead of that alternative exam because the Defendants' promises about the administration of that exam were more favorable than the competing exam's. Mr. Enow's choices came down to "take the NAPLEX" (under whatever conditions it is offered) or "don't get licensed as a pharmacist." Thus, it would be incredibly difficult for Mr. Enow to show that he chose to take the NAPLEX in reliance upon any promises made by the Defendants.

Accordingly, the Court finds that the Defendants are entitled to summary judgment on any possible iteration of Mr. Enow's breach of contract claims against them.[12]

---

[12]     To ensure that the Court has given Mr. Enow full consideration of all possible claims he could assert, the Court has also reviewed that portion of Mr. Enow's deposition testimony that is included in the record. *See* Docket # 135-1. During his deposition, Mr. Enow was asked to identify all of those portions of the Candidate Bulletin with which, he contends, NABP did not comply. More of Mr. Enow's answers are somewhat elliptical or abstract and do not warrant further consideration.

But Mr. Enow does allege that he was treated unfairly because the NAPLEX exam format changed in November 2016 – after his first attempt but before his second. Mr. Enow states that the "old" NAPLEX format was what existed at the time he graduated from pharmacy school and that he was "supposed to stick to the old NAPLEX" that he and his fellow graduates took the first time. He explains that "the results of [the new] NAPLEX were very low in the

### 3. Negligence claim

Finally, the Court considers Mr. Enow's negligence claim. That claim is not particularly well-formed in Mr. Enow's Second Amended Complaint. He alleges that the NAPLEX is a "high stake exam that is the career gateway for someone who has been in school 7 years or more" and that "NABP and Pearson should be held to a higher responsibility when handling such decisions." He alleges that "Pearson showed negligence in monitoring and maintaining the exam software," because "the technical difficulties were directly linked to Pearson's exam software." He also contends that "in the investigation, Pearson falsified what happened." He contends that both NABP and Pearson "showed negligence in handling the investigation" because "they never followed what was written in the incident report or called the test center to confirm what happened." He also contends that NAPB "ignored" a complaint that he made at some point and "did not reply or comment on the complaint."

---

country because of this change[ ] and it affected [him and it] was unfair to him that he did not take the same exam that his peers took because of this delay." Putting aside various evidentiary defects in this argument, the record reflects that the 2016 Candidate Bulletin Mr. Enow relies upon specifically advises candidates of the upcoming change to the NAPLEX format. And nothing in that Bulletin, or any other materials in the record, represents that candidates who attempted taking the "old" NAPLEX but failed would continue to be able to do so after the format change. Thus, Mr. Enow cannot establish any contractual-type claim based on the change in NAPLEX formats.

Mr. Enow also appears to take issue with a letter that NABP sent him after he failed the 2017 NAPLEX. Responding to his complaints about the testing circumstances, NABP offered to refund Mr. Enow's $405 exam fee, and, Mr. Enow admits, NABP did so. Mr. Enow contends that, as a result of that communication, the 2017 exam result "was supposed to be cancelled completely, canceled and voided, not even on my record based on that." As best the Court can determine, that correspondence is found at Docket # 138-13. Nowhere in that communication does NABP offer to cancel or void the results or reporting of Mr. Enow's 2017 NAPLEX attempt. For the same reasons, Mr. Enow has not demonstrated that he was entitled to re-sit for an exam within 5 business days after his 2017 exam results were "cancelled," as the Bulletin permits.

Under Colorado law, a plaintiff asserting a claim of negligence must show: (i) the defendant owed the plaintiff a duty; (ii) the defendant breached that duty; (iii) there was a causal connection between that breach and the plaintiff's injuries, and (iv) the plaintiff suffered losses. *Hyler v. Geo-Sis Helicopters, Inc.*, 269 F.3d 1190, 1193 (10th Cir. 2001). The question of whether a defendant owes a plaintiff a legal duty is determined as a matter of law. Where there is no statute creating the legal duty, the court's consideration of whether a duty exists reflects "the sum total of those considerations of policy which lead the law to say the plaintiff is or is not entitled to protection." In addressing that question, the court considers factors such as "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor," among others. *Ayala v. U.S.*, 49 F.3d 607, 611 (10th Cir. 1995).

The Court can assume, without necessarily finding, that the Defendants owe a duty of care to act reasonably when administering the NAPLEX to prospective pharmacists. As Mr. Enow notes, passing the exam is required for licensure as a pharmacist anywhere in the U.S., and thus, the exam serves as a "gateway" through which all prospective pharmacists must pass. If the Defendants are careless in their administration of the exam, qualified pharmacists might be excluded (despite extensive money and time spent training for that career) and unqualified pharmacists might be certified. Because the Defendants control the testing process in its entirety, it is appropriate to place the burden on them to ensure that tests are administered appropriately. Thus, the Court will assume that Mr. Enow could establish that the Defendants owed him a legal

duty to use reasonable care when administering the NAPLEX and in responding to his technical difficulties.

But Mr. Enow has not come forward with evidence that would show that the Defendants breached that duty – that is, that they failed to exercise reasonable and ordinary care in the administration of the test -- in the circumstances presented here. Many of the allegations in Mr. Enow's Second Amended Complaint are without any support in the instant record. For example, Mr. Enow has not come forward with evidence that support his contention that the technical difficulties were the result of defects in the exam software, rather than user error. He has not come forward with evidence that Pearson "falsified" any facts in the investigation. And he has not come forward with evidence that the Defendants failed to contact the individuals involved at the test center as part of the investigation; to the contrary, the incident reports contain statements from the test center staff about what occurred. *See e.g.* Docket # 148-1 at 4 (statements from Patricia Ellis and Andrew Cairns). In any event, as discussed above with regard to the good faith and fair dealing claim, the undisputed facts in the record indicate that the Defendants promptly reacted to the technical difficulties he experienced during the testing and that they thoroughly investigated the situations after the fact. Although it might be desirable that standardized testing services ensure that no technical difficulties occur during exams, Mr. Enow has not shown that the degree of care exercised by the Defendants to minimize such events was unreasonable or inconsistent with industry standards. Accordingly, because Mr. Enow has not come forward with evidence demonstrating a triable issue of fact as to whether the Defendants breached any duty of care they owed to him, the Defendants are entitled to summary judgment on his negligence claims.

Thus, the Defendants' Motions for Summary Judgment are granted.

**D. Remaining matters**

Both NABP **(# 139)** and Pearson **(# 149)** have moved to restrict access to their summary judgment briefing and many supporting exhibits. Both motions are insufficiently conclusory in their identification of the particular privacy interests that are implicated, and neither motion makes an adequate showing that less-restrictive alternatives (such as redaction) are not suitable. Accordingly, the Court finds that the Defendants have not made the showings required by D.C. Colo. L.. Civ. R. 7.2(c)(2)-(4), and therefore, the motions are denied. The Clerk of the Court shall lift the provision restrictions placed on Docket # 135-138 and #142-148.

NABP filed a "Joinder" **(# 205)** in Pearson's opposition **(# 204)** to a request by Mr. Enow for an extension of time. That document was filed as a motion. Because the document does not request relief, the Court directs that the Clerk of the Court terminate its status as a motion.

## CONCLUSION

For the foregoing reasons, Mr. Enow's Objections **(# 131)** are **OVERRULED**, and the Court **AFFIRMS** the Magistrate Judge's April 4, 2019 Order **(# 129)**. The Defendants' Motions for Leave to Restrict **(# 139, 149)** are **DENIED**, and the Clerk of the Court shall lift all provisional restrictions on Docket # 135-138 and # 142-148. Mr. Enow's Motion for Sanctions **(# 161)** is **DENIED**. The Clerk of the Court shall terminate Docket # 205's status as a motion. The Defendants' Motions to Strike **(# 196, 199)** are **GRANTED IN PART** and **DENIED IN PART** as set forth herein. The Defendants' Motions for Summary Judgment **(# 140, 141)** are **GRANTED**. The Clerk of the Court shall enter judgment in favor of both Defendants on all claims by Mr. Enow and shall thereafter close this case.

Dated this 19th day of November, 2019.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge