**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 17-cv-01645-MSK-SKC

**ENOW ENOW,**

    Plaintiff,

v.

**NATIONAL ASSOCIATION OF BOARDS OF PHARMACY, and
PEARSON PROFESSIONAL CENTERS,**

    Defendants.

_____

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Pearson Professional Centers' ("Pearson") Motion for Reconsideration **(# 213)** of the Court's November 19, 2019 Opinion and Order **(# 209)** that, among other things, denied Pearson's Motion for Leave to Restrict **(# 149)** public access to certain Pearson filings.

The Court assumes the reader's familiarity with the proceedings to date. Pearson administers computer-based professional licensing exams, including the NAPLEX exam that is administered to candidates for licensure as pharmacists. In conjunction with the Plaintiffs' claims against Pearson in this case (and Pearson's motion for summary judgment thereupon), Pearson submitted the six documents currently at issue: (i) two documents, Exhibits L **(# 147)** and M **(# 147-1)**, which are titled "NBAP Client Reference" and which consist of instructions to Pearson employees as to how the NAPLEX exams for 2016 and 2017 were to be conducted (*i.e.* containing information about how to properly verify test-takers' ID, listing what items test

candidates could and could not possess in the testing room, when breaks would be allowed, etc.); (ii) two documents, Exhibits N **(# 147-2)** and Q **(# 148)** that comprise the "test maps" that identify each interaction (*e.g.* mouse clicks, scrolling, and text input) that Mr. Enow had with the 2016 and 2017 tests; and (iii) two documents, Exhibits O **(# 147-3)** and R **(# 148-1)** that consist of incident reports describing the technical difficulties Mr. Enow experienced during his tests, the steps that Pearson representatives took to address those steps during the text, and various notes created by Pearson in the course of investigating Mr. Enow's complaints. Pearson requested **(# 149)** that those documents (and others) be restricted from public access under D.C. Colo. L. Civ. R. 7.2, but in its November 19, 2019 Opinion, the Court denied that motion, finding that Pearson had offered "insufficiently conclusory" showings regarding the requirements of Local Rule 7.2(c)(2)-(4).

Pearson then filed the instant motion **(# 213)**, seeking reconsideration of the Court's denial of restricted access, offering a more detailed argument as to why the six documents identified above should be subject to restriction.

The Court has some doubt that Pearson's motion for reconsideration is proper, given that it simply seeks to re-argue (albeit in more detail) matters that were previously presented to and considered by the Court. *See generally Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (a motion for reconsideration is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing"). And Pearson does not contend that the current motion turns on newly-discovered evidence or that its failure to adequately articulate the grounds for its request in its prior motion was the result of some form of excusable neglect. Nevertheless, because the outcome is the same, the Court will overlook that defect and consider the motion on its merits.

The Court need not recite the familiar standards governing restrictions on public access. It is sufficient to note that the public holds a strong interest in having access to materials that have been presented to and considered by the Court in discharging its judicial functions. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). That public interest may yield in certain circumstances, including where public access to documents "might harm a litigant's competitive standing." *Id.* The party seeking to restrict public access – here, Pearson – bears the burden of overcoming the presumption favoring access by "articulating a real and substantial interest that justified depriving the public of access to the records that inform our decision-making process." *Sacchi v. IHC Health Services, Inc.*, 918 F.3d 1155, 1160 (10th Cir. 2019). With those principles in mind, the Court turns to the three categories of documents to which Pearson seeks to restrict access.

1. Testing center instructions

Exhibits L and M are materials that Pearson provides to its test center staff, instructing them as to the procedures to use in administering exams. According to the affidavit of Guy Speier, tendered in support of Pearson's motion, these materials are not disclosed to the public because "the contain[ ] specific procedures for administering [ ] exams, which, if released, publicly, might give a candidate an unfair advantage or might give a competitor information that would harm Pearson in the marketplace." Mr. Speier does not elaborate on how, specifically, a candidate or competitor could use the information contained in these documents to Pearson's disadvantage, and from the Court's own review of those documents, it is difficult to see how they could. The information contained in these documents are unremarkable protocols for checking test candidates' identification, for determining what materials a candidate may and may not possess during the test, when breaks may be given, and how to respond to situations where it

appears that a candidate has engaged in misconduct. With the minor exceptions of the identification of specific Pearson officials that test proctors should contact, the instructions in these documents are ordinary, common-sense practices that are likely followed in one form or another by every test administrator. Pearson has not identified any component of these instructions that is proprietary to Pearson-administered tests, much less demonstrated how a competitor's use of such information could result in substantial harm to Pearson's operations. Nor has Pearson identified how a candidate's knowledge of what forms of ID are and are not acceptable or when breaks will be provided would operate to give a candidate an inappropriate advantage in testing. Because Pearson's stated justifications for restricting access to these documents remains at a largely conclusory level, the Court denies Pearson's motion.

2. Test maps

Exhibits N and Q constitute the "test maps" that Pearson produced to show how Mr. Enow worked through the two exams at issue here. For purposes of providing context, the Court quotes a representative sample portion of Exhibit N:

> 2016-8-19 09.06.53.432 : INFO : Setting exhibit position to java.awt.Point[x=0, y=276]
>
> 2016-8-19 09.06.54.071 : INFO : Vertical scroll bar adjusted to "1" for "Scn:B38ED7596C6E40E5AF0DC0EC7E86A0C8"
>
> 2016-8-19 09.07.20.264 : INFO : Navigate next requested
>
> 2016-8-19 09.07.20.264 : INFO : deliveryContext.resetIsInput Cached called
>
> 2016-8-19 09.07.20.264 : INFO : deliveryContext – comItem. getInput() called
>
> 2016-8-19 09.07.20.264 : INFO : deliveryContext – comItem. getInput() called

> 2016-8-19 09.07.20.264 : INFO : deliveryContext – get RawScore called
>
> 2016-8-19 09.07.20.280 : INFO : Display message "NABP requires you to view all of the information in the current patent profile or question before moving to the next question.  Please move each scroll bar the entire length and/or width of the patient profile in question."

Mr. Speier's affidavit states that these test maps should be restricted from public access because they "contain source code for Pearson's test delivery software."  He does not specifically identify which of the entries in the 120+ page test maps refer to test delivery source code, nor explain what portions of the code Pearson claims to be proprietary, why it is proprietary, and how Pearson would be affected if that source code was disclosed to its competitors.

It is clear that some portions of the test maps do not touch on Pearson's test delivery code, or at the very least, do not touch on any allegedly proprietary portion of that code.  For example, in the fragment quoted above the first entry simply reflects the location where an exhibit is displayed on the screen; it seems unlikely that Pearson is claiming some proprietary advantage in its own software's ability to place exhibits on-screen at a certain location.  Similarly, the percipient information that Mr. Enow requested to navigate to a particular test question at a given point in time does not implicate any proprietary concerns of Pearson, nor does the message that Pearson displayed when Mr. Enow apparently failed to scroll through the entire patient profile.  The test map might reveal certain functions in the test software that might refer to a proprietary software design owned by Pearson, or it might refer to routine software functions (getInput, resetIsInputCached) that any programmer would recognize and use to accomplish the same results.  In this respect, Mr. Speier's affidavit is both overbroad (in suggesting that the entirety of the test map contains "source code") and insufficiently specific (in failing to identify those portions of the test map that reflect proprietary Pearson source code).

Moreover, to the extent that some test map entries may reveal proprietary Pearson code, Pearson has not demonstrated that those instances cannot be effectively redacted so as to both preserve Pearson's interest in not disclosing those fragments of code and simultaneously avoid the need to restrict public access to the entirety of Exhibits N and Q. *See* D.C. Colo. L. Civ. R. 7.2(c)(4).

Accordingly, the Court denies Pearson's motion to restrict access to Exhibits N and Q.

3. Incident reports

Exhibits O and R are the incident reports that Pearson prepared to describe Mr. Enow's testing complaints and to memorialize the investigation that Pearson conducted into the complaints, both during the testing process and thereafter. According to Mr. Speier's affidavit, Pearson requests that these exhibits be restricted because "Pearson does not make[ ] these reports available to candidates and not to the public" and because the reports "contain personal identifying information about Mr. Enow, which Pearson has agreed to keep confidential, as well as information about the steps Pearson took to investigate Mr. Enow's alleged issues." Mr. Speier's affidavit offers no explanation as to how disclosure of the incident reports would result in any harm to Pearson. *See* D.C. Colo. L. Civ. R. 7.2(c)(3).

The fact that Pearson does not make these reports available to candidates or the public in ordinary circumstances does not outweigh the need for public disclosure of documents filed with the court to ensure transparency in litigation. To the extent that the incident reports disclose information about Mr. Enow, that information appears to be limited to Mr. Enow's name, phone number, address, and e-mail address. Mr. Enow has not complained of such disclosure, but to the extent that he has an objection, it would seem that redaction of Mr. Enow's information, rather than wholesale restriction of the highly-relevant incident reports, would be the proper course of action.

Accordingly, the Court finds that Pearson has no overcome the presumption of public access to any of the six documents at issue. Therefore, Pearson's motion for reconsideration **(#213)** of the denial of its motion to restrict is **DENIED**.

Dated this 15th day of May, 2020.

**BY THE COURT:**

*(signature)*

Marcia S. Krieger
Senior United States District Judge